UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVARRIO WEBB, #451915,

       Plaintiff,                        CIVIL ACTION NO. 12-12370

   v.                                  DISTRICT JUDGE SEAN F. COX

                                       MAGISTRATE JUDGE MARK A. RANDON

SAGINAW POLICE DEPARTMENT
and BLAKE HIBEN,

       Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT
(DKT. NO. 33)**

## I.    INTRODUCTION

Under cover of night, Davarrio Webb jumped from a second floor window and fled on foot from the commission of a home invasion. After being located by a police dog, Officer Blake Hiben forcibly subdued and arrested Webb, who was then transported to a local hospital for treatment of puncture wounds (from dog bites) and a broken wrist.[1] Webb sued. He alleges that, in carrying out his arrest, Officer Hiben used excessive force in violation of the Fourth Amendment, committed an assault and battery and was grossly negligent under state law. Webb also blames the Saginaw Police Department ("SPD") for his injuries, because Officer Hiben acted under SPD policies, which, he says, discourage citizens from filing complaints about the use of excessive force by SPD officers.

---

[1] Any claims related to the puncture wounds are not properly against Officer Hiben, who did not handle the police dog.

Defendants' motion to dismiss and for summary judgment (Dkt. No. 33) is pending. It is fully briefed (Dkt. Nos. 38-39); the court dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons indicated below, this Magistrate Judge finds that: (1) there is a genuine issue of material fact regarding whether Officer Hiben used excessive force in his post-restraint treatment of Webb; (2) Webb's state tort claim of assault and battery is not barred by Michigan's statutory wrongful conduct rule; (3) Webb's gross negligence claim is precluded under Michigan law; (4) SPD is not a proper party; and, (5) Webb has not met his burden to show that there is a genuine issue for trial regarding his excessive force claim against SPD. Therefore, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED IN PART AND DENIED IN PART.**

## II.   BACKGROUND

### A. *The Home Invasion*

On the night of May 29, 2009, Willie Brock drove onto the driveway of his Saginaw, Michigan home (Dkt. No. 33, Ex. 7, Hiben Police Report, p. 3). As he exited his vehicle, two men approached him from behind his house (Dkt. No. 33, Ex. 8, Brock's Police Statement, p. 5). Brock ran from his home to a YMCA, where he called the police to report the incident; he told the police that the men appeared to be armed (Dkt. No. 33, Ex. 7, at 3).

Officer Hiben and other SPD police officers were dispatched to Brock's home where they noticed that the front door was open. *Id.* Brock, who had returned home with the officers, said the door was locked when he left. *Id.* Once inside, officers noticed damaged pieces of the door frame. *Id.* Moments later, Brock ran through the front door and notified officers that an individual – later determined to be Webb – was exiting from a second-floor window. *Id.* The parties present strikingly different versions of what happened next. However, it is undisputed

that after he was placed under arrest, Webb was transported to a local hospital and treated for puncture wounds and a broken wrist.

### B. Webb's Version of the Chase and Arrest

Webb testified during his deposition that he did not know that police officers had arrived at Brock's home; he only saw flashlights (Dkt. No. 33, Ex. 1, Pl.'s Dep. Tr., p. 39). But, in his statement to detectives, Webb admits that he saw police lights in front of the house while he was inside (Dkt. No. 33, Ex. 5, Pl.'s Statement to Detectives, p. 11). Webb testified that he slid out of a second story window and fell directly onto his buttocks (Dkt. No. 33, Ex. 1, at 66). He claims that Officer Hiben never identified himself as a police officer and simply told him, "Hold on." *Id.* at 68. Webb also testified that he got up and ran, with someone chasing him, until he could run no more. *Id.* at 69.[2]

According to Webb, when police officers located him, he was sitting on the porch of a home in the area. *Id.* at 70. He testified that, although he complied with officers' demands to put his hands up and face the fence, the police dog was released and bit him several times.[3] *Id.* at 81-82. However, in his response to Defendants' motion, Webb claims that: officers located him behind a garage and he refused the officers' orders to come out with his hands up, to get on the ground, and to put his left hand behind his back (Dkt. No. 38, p. 5-6).

---

[2] Webb's Complaint states that Officer Hiben gave chase, but in his deposition, Webb testified that he did not know who was chasing him (Dkt. No. 33, Ex. 1, at 57).

[3] In his Complaint, Webb alleges that Hiben commanded the dog to bite him. However, in his deposition, Webb testified that he could not identify any of the officers who gave commands to the dog, and when asked whether his Complaint stated that Officer Hiben commanded the dog, Webb testified, "It was somebody from the Saginaw Police Department. And I think it was RO [referring to Officer Hiben]. So I put it as RO, because it stands for Reporting Officer" (Dkt. No. 33, Ex. 1, at 80).

During his deposition, Webb testified that after the dog attacked him and while his hands were in the air, Officer Hiben grabbed him by the right arm and threw him to the ground with such force as to break his wrist (Dkt. No. 33, Ex. 1, at 82). Webb claims that while he was handcuffed, he rolled over onto his side and told officers that the handcuffs were too tight. *Id.* at 111. He claims that Officer Hiben then kicked him in the ribs twice, rubbed his face in the dirt, and told him to roll over. *Id.* at 111-112.

Although Webb's Complaint alleges that SPD officers threatened "that he better not file a complaint against SPD officers for the excessive force used against him," Webb admitted during his deposition that no one ever discouraged him from filing a lawsuit (Dkt. No. 22, Am. Compl. at ¶ 18; Dkt. No. 33, Ex. 1, at 150).

### C. *SPD Officers' Version of the Chase and Arrest*

Officer Hiben's Affidavit states that he observed Webb land face-first on the concrete after leaping from Brock's second story window (Dkt. No. 33, Ex. 6, Hiben Aff., at ¶¶ 6-7). In his arrest report, Officer Hiben noted that Webb "had both his hands and arms outstretched in from of him attempting to brace his fall when he landed on the concrete" (Dkt. No. 33, Ex. 7, Hiben Arrest Report, p. 3). The hospital medical records state, "according to police, [Webb] jumped out of a second story window, rolled across the lower room, landed on the ground, landing on his left side and wrist and proceeded to get up and keep running" (Dkt. No. 33, Ex. 11, St. Mary's Medical Center Records, p. 1).

Officer Hiben contends that despite identifying himself as a police officer and ordering Webb to "stop," Webb fled on foot (Dkt. No. 33, Ex. 6, at ¶ 8). Officer Hiben states that he pursued Webb but eventually lost sight of him, at which that point he requested backup and a canine unit to set up a perimeter search in the area in which Webb disappeared. *Id.* at ¶¶ 9-10.

Eventually, the canine officer located Webb in a "dense, brushy, narrow area between a garage and a large fence," identified himself as a police officer, and ordered Webb to approach with his hands up. *Id.* at ¶¶ 12-13. After Webb refused these orders, the dog was released and Webb emerged from behind the garage. *Id.* at ¶15. Officer Hiben claims that Webb again refused his orders to get on the ground, at which point Officer Hiben "placed [Webb] under arrest by grabbing his right wrist behind his back and securing him on the ground." *Id.* at ¶¶ 16-17. In his arrest report, Officer Hiben noted that when he placed Webb on the ground, he fell onto his left arm and held it underneath his chest, refusing Officer Hiben's orders to place it behind his back (Dkt. No. 33, Ex. 7, at 4). Officer Hiben's Affidavit states that he secured Webb in handcuffs while he was on the ground; and, never kicked Webb, twisted his arm, or pushed his face into the ground (Dkt. No. 33, Ex. 6, at ¶¶ 18-19).

### III. STANDARDS OF REVIEW

#### A. *Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff*." DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs*., 510 F.3d 631, 634 (6th Cir. 2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual

allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Supreme Court clarified the concept of "plausibility" in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id*. at 678. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969). Complaints drafted by pro se litigants are held to less stringent standards than formal pleadings drafted by lawyers and will be liberally construed in determining whether the complaint fails to state a claim upon which relief could be granted. *See* e.g., *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), nor may courts construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993).

### B. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

## IV.   APPLICABLE LAW AND ANALYSIS

Webb makes several arguments: (1) Officer Hiben's conduct violated his Fourth Amendment rights; (2) Officer Hiben assaulted and battered him and was grossly negligent under Michigan law; and, (3) SPD violated his Fourth Amendment rights.

### A. Officer Hiben is not Entitled to Qualified Immunity on Webb's Claim that he Kicked him in the Ribs and Rubbed his Face in the Dirt

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law. *Dominguez v. Corr. Med. Services*, 555 F.3d 543, 549 (6th Cir. 2009).

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: (1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation. *Dominguez,* 555 F.3d at 549. For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable [government official] would understand that what he is doing violates that right." *Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th Cir. 2009); *see also Saylor v. Bd. of Educ.*, 118 F.3d 507, 515 (6th Cir. 1997) ("[f]or a constitutional right to be clearly established, as this court has repeatedly noted, "the law must be clear in regard to the official's particular actions in the particular situation'") (citations omitted).

### 1. *Viewing the Facts in the Light Most Favorable to Webb, he has Established a Constitutional Violation*

The first step in the qualified immunity analysis is to consider whether, viewing the facts in the light most favorable to Webb, he could establish a Constitutional violation with respect to Officer Hiben.

#### a. Excessive Force

Webb says his excessive force claim is based upon three discrete actions: (1) Officer Hiben breaking his wrist when he unnecessarily and forcibly threw him to the ground; (2) Officer Hiben kicking him in the ribs while he was handcuffed on the ground; and, (3) Officer Hiben rubbing his face in the dirt while he was handcuffed and prone. *See* Dkt. No. 38, p. 6.  As explained below, this Magistrate Judge finds that Webb can only establish a Constitutional violation based on being kicked in the ribs and having his face rubbed into the ground.

##### i. *Being Forcibly Thrown to the Ground*

Webb's claim of excessive force is analyzed under the Fourth Amendment. *Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2010) (the Fourth Amendment's prohibition against unreasonable seizures applies to excessive force claims that arise in the context of an arrest) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  The Fourth Amendment standard requires courts to determine whether a particular use of force is reasonable based on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Totman v. Louisville Jefferson Cnty. Metro Gov't.*, 390 F. App'x 454, 462 (6th Cir. Aug. 13, 2010) (unpublished) (citations omitted).  "This reasonableness inquiry is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* Further, in evaluating whether or not the force used was reasonable, courts must consider "the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001) (citations omitted).

Webb claims that Officer Hiben used excessive force when he unnecessarily threw him to the ground to effectuate the arrest, and the force caused his wrist to break. Officer Hiben denies the allegations.

Even if Webb could prove that Officer Hiben threw him to the ground – breaking his wrist – his claim fails as a matter of law. Officer Hiben's actions were reasonable in light of the circumstances. Webb fled from the night-time commission of a home invasion. The victim, Willie Brock, informed officers that Webb appeared to have been in possession of a firearm, and Webb never told officers he was unarmed. Webb also admits that he actively resisted arrest; and, refused orders to put his hands up, get on the ground, and place his left arm behind his back. When Officer Hiben forcibly brought Webb to the ground, he was under the reasonable belief that Webb could be armed. As Webb had repeatedly refused orders, Officer Hiben could not be sure that he would not again try to flee, or attempt to use a weapon.

No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Based upon the record taken as a whole, this Magistrate Judge concludes that no rational trier of fact could conclude that Officer Hiben used excessive force in taking Webb to the ground. Alternatively, reasonable officers could disagree as to whether Officer Hiben's conduct (in subduing and securing Webb) violated Webb's rights, and, therefore, Hiben should be entitled to qualified immunity on this claim.

### ii. *Being Kicked in the Ribs While Handcuffed*

In this Circuit, the prohibition of violent physical force against a criminal suspect, who already has been subdued and does not present a danger to himself or others, is clearly established. *City of Circleville*, 583 F.3d at 367. In *Bultema*, the Sixth Circuit held that "the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." *Bultema v. Benzie County*, 146 F. App'x 28, 37 (6th Cir. 2005) (unpublished). Although *Bultema* is an unpublished opinion, the Sixth Circuit reached the same conclusion in a number of other cases. *See, e.g.*, *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002) (holding that no reasonable officer would strike a handcuffed arrestee in the head); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (holding that a "totally gratuitous blow with a policeman's nightstick" to a handcuffed, unresisting suspect was constitutionally unreasonable); *Lewis v. Downs*, 774 F.2d 711, 714 (6th Cir. 1985) (holding that beating and kicking restrained suspects who are in the control of the police is "plainly excessive" force). It has also held that a plaintiff may "allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999) (citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996) (upholding excessive force claim where plaintiff alleged that officers used excessive force in removing her wedding ring)).

While many of his allegations are inconsistent, Webb steadfastly claims that Officer Hiben kicked him in the ribs while he was handcuffed and lying on the ground. Defendants claim that Webb was "resisting arrest" while he was handcuffed by rolling around on the ground and raising his head to speak to officers (Dkt No. 33, p. 12, ¶ 11). Webb admits that he rolled onto his side but says it was only to tell officers that his handcuffs were too tight (Dkt No. 33,

Ex. 1, at 111-112). Viewing the facts in the light most favorable to Webb, it cannot be said as a matter of law that he was resisting arrest.

If Webb's version of events is believed, he presented no danger to police after he was handcuffed, and a kick to the ribs would constitute excessive force. Officer Hiben denies the allegation. However, Webb's medical records indicate that he complained of "left chest wall pain laterally" and, upon physical examination, his ribs were tender (Dkt. No. 33, Ex. 11, at 1).[4]

A genuine dispute as to a material fact exists. If Officer Hiben did kick Webb, a clear constitutional violation occurred; the issue is for a fact-finder to decide. Summary judgment should not be granted to Officer Hiben on this claim.

### iii. Having his Face Rubbed into the Dirt

The Sixth Circuit has held that even where the physical contact between the parties did not cause a resulting injury or leave excessive marks, a plaintiff may allege excessive force. *Ingram*, 185 F.3d at 597. "Gratuitous violence" inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial. *See, e.g.*, *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006). In *Pigram*, it was alleged that the defendant police officer slapped the handcuffed plaintiff in the face because he was being unruly and had a "smart-ass mouth." *Id*. at 513. Finding the defendant's conduct to be unreasonable under the Fourth Amendment for summary judgment purposes, P*igram* emphasized that a "slap to the face of a handcuffed suspect – even a verbally unruly suspect – is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect." *Id*. The Court reached this conclusion notwithstanding

---

[4] This Magistrate Judge understands that, like the injury to his wrist, it is possible that the injury to Webb's ribs was a direct result of his fall from a second-floor window. But, how Webb received his injuries is a question of fact for a jury.

the relatively minimal use of force applied and the absence of any resulting injury. *See id.* (stating "under specific circumstances, a slap may constitute a sufficiently obvious constitutional violation" even if "involv[ing] less physical force than a 'tackle'").

Webb claims that while he was handcuffed and lying on the ground, Officer Hiben rubbed his face in the dirt. Officer Hiben denies the allegations and notes that Webb's medical records do not indicate that he suffered any recognizable, diagnosed injury. Case law is clear that the absence of a resulting injury is not fatal to Webb's claim. Because there is a genuine issue as to whether Officer Hiben, in fact, rubbed Webb's face in the dirt while he was handcuffed and prone – which a reasonable jury could find to be a use of excessive force – summary judgment should not be granted to Officer Hiben on this claim.

### 2. *Webb's Constitutional Rights Were Clearly Established*

Officer Hiben argues that he is entitled to qualified immunity, even if he violated Webb's constitutional rights, because a reasonable officer in his position would not have known that his conduct violated Webb's constitutional right to be free from excessive force.

As discussed above, a reasonable juror could find, based on the evidence, that Officer Hiben both kicked Webb in the ribs and rubbed his face in the dirt absent a legitimate government interest, namely officer safety. "[I]n this Circuit, the law is clearly established that an officer may not use additional gratuitous force once a suspect has been neutralized." *Alkhateeb v. Charter Township of Waterford*, 190 F. App'x 443, 452 (6th Cir. 2006) (citing *Phelps*, 286 F.3d at 301); *see also Pigram*, 199 F. App'x at 513 (citing cases); *Bultema*, 146 F. App'x at 37 (citing *McDowell*, 863 F.2d at 1307, and stating "we have also held for more than twenty years that it is clearly established in this circuit that 'a totally gratuitous blow' to a suspect who is handcuffed and offering no resistance violates the Fourth

-13-

Amendment"). Officer Hiben was on notice that his conduct was a violation of Webb's constitutional rights to be free from excessive use of force because it was "'obvious' under the general standards of constitutional care" existing as of May 29, 2009 – the date of the relevant events – that such conduct violated Webb's Fourth Amendment rights. *See generally Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005). Specifically, it was clear that Officer Hiben could not push a handcuffed detainee's face into the ground or kick him in the ribs, absent a genuine threat to his safety or that of the other officers. *See Phelps*, 286 F.3d at 30; *Downs*, 774 F.2d at 714 . Therefore, Officer Hiben should not be entitled to qualified immunity, and summary judgment should not be granted on those claims.

### B. State Law Claim of Assault and Battery Should Not Be Dismissed

Officer Hiben contends that Webb's state law tort claim of assault and battery is barred by Michigan statutory wrongful conduct rule. This Magistrate Judge disagrees.

Michigan's statutory wrongful conduct rule provides in pertinent part:

(1) Except as otherwise provided in this section, the court shall dismiss with prejudice a plaintiff's action for an individual's bodily injury or death. . .if the bodily injury or death occurred during 1 or more of the following:

(a) The individual's commission, or flight from the commission, of a felony.

\* \* \*

(2) If the bodily injury or death described in subsection (1) resulted from force, the court shall not apply subsection (1) to the claim of the plaintiff against a defendant who caused the individual's bodily injury or death unless the court finds that the particular defendant did either of the following:

(a) Used a degree of force that a reasonable person would believe to have been appropriate to prevent injury to the defendant or others.

(b) Used a degree of force that a reasonable person would believe to have been appropriate to prevent or to respond to the commission of a felony.

Mich. Comp. Laws § 600.2955b.

Under Michigan law, an officer who uses excessive force in arresting an individual may be held liable for assault and battery. *Bennett v. Krakowski*, 671 F.3d 553, 561 (6th Cir. 2011). Assault is "an intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *VanVorous v. Burmeister*, 262 Mich. App. 467, 482-83 (2004) (internal quotation marks omitted) (quoting *Espinoza v. Thomas*, 189 Mich. App. 110, 119, 472 N.W.2d 16 (1991)). Battery is "a willful and harmful or offensive touching of another person which results from an act intended to cause such contact." *Id.* at 483 (internal quotation marks omitted) (quoting *Espinoza v. Thomas*, 189 Mich. App. 110, 119, 472 N.W.2d 16 (1991)). A police officer making an arrest may use reasonable force. *Id.* at 480. The force reasonably necessary is the measure of force that "an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary. Thus, the standard is an objective one under the circumstances." *Id.* at 481 (internal quotation marks omitted) (quoting *Brewer v. Perrin*, 132 Mich. App. 520, 528, 349 N.W.2d 198 (1984)).

Officer Hiben argues that Michigan's statutory wrongful conduct rule bars Webb's claim because it is based in whole or part on Webb's illegal conduct. Mich. Comp. Laws. § 600.2955b. Officer Hiben contends that although the bodily injury to Webb resulted from force, the force was reasonable, thereby barring the claim.

Like Webb's Fourth Amendment claim, this Magistrate Judge finds that a reasonable trier of fact could find that Officer Hiben's post-restraint use of force was unreasonable. Therefore, under *VanVorous*, the assault and battery claim should not be dismissed because, if Webb's

version of events is credited, his injury is not barred by Michigan's statutory wrongful conduct rule.

### C. State Law Claim of Gross Negligence Should Be Dismissed

Michigan courts do not allow a plaintiff to premise a gross negligence claim on an intentional tort. *VanVorous*, 262 Mich. App. at 483-84. Webb brings an action for assault and battery. He does not plead in the alternative, and there is no suggestion that Officer Hiben's actions were unintentional. Accordingly, Officer Hiben should be entitled to summary judgment with respect to Webb's gross negligence claim.

### D. The Excessive Force Claim Against SPD Should Be Dismissed

Defendants argue that Webb's claim against SPD should be dismissed because SPD is not a proper party, or because no constitutional violation has occurred. Defendants also claim that Webb cannot point to an express policy or custom, pursuant to which Plaintiff's rights were violated.

As an initial matter, Defendants are correct that SPD is not a proper party, as it is merely a creature of the City of Saginaw and is not a legal entity capable of being sued. *See Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997); *Pierzynowski v. Police Dep't City of Detroit*, 941 F. Supp. 633, 637 n.4 (E.D. Mich. 1996) (Gadola, J.). In such a case, however, the proper course is not to dismiss the claim, but to construe the claim as being asserted against the municipality as the real party in interest. *See Williams v. Northfield Police Dep't*, No. 09-6192, 2010 U.S. Dist. LEXIS 71172, 2010 WL 2802229, at *4 n.1 (D.N.J. July 14, 2010); *Mahan v. Huber*, No. 09-cv-00098, 2010 U.S. Dist. LEXIS 19892, 2010 WL 749810, at *4 (D. Colo. Mar. 2, 2010); *cf. Brandon v. Holt*, 469 U.S. 464, 469-71, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985). Indeed, by naming SPD as a defendant, Webb has effectively named the City of

Saginaw. *Cf. Haverstick Enterprises, Inc. v. Fin. Federal Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir. 1994) ("A suit against a city police department in Michigan is one against the city itself, because the city is the real party in interest").

A local government is only liable under § 1983 for its own wrongdoing and not under any theory of respondeat superior. A municipality may, however, "be held liable under § 1983 if it maintained a policy or custom that caused the violation" of the plaintiff's rights. *Harvey v. Campbell County*, 453 F. App'x 557, 562 (6th Cir. 2011). "A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must identify the policy, connect the policy to the County itself and show that the particular injury was incurred because of the execution of that policy." *Graham*, 358 F.3d at 383.

For the reasons set forth above, Webb has produced sufficient evidence to show that a genuine dispute as to material facts exists with regard to a constitutional violation of excessive force. However, because Webb admits that no SPD officer ever discouraged him from filing a lawsuit and because he points to no express policy or custom, pursuant to which his rights were violated with respect to the use of excessive force, his claim against SPD should be dismissed.

## V. CONCLUSION

Because there is a genuine issue of material fact regarding whether Officer Hiben used excessive force in his post-restraint actions, this Magistrate Judge **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**. Specifically, Webb's claims of: (1) gross negligence against Officer Hiben; (2) excessive force against the Saginaw Police Department; and, (3) excessive force against Officer Hiben for bringing him to the ground should be **DISMISSED WITH PREJUDICE**. Webb's

claims of excessive force and assault and battery against Officer Hiben – for the alleged kick to the ribs and for rubbing his face in the dirt -- should **PROCEED.**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

                                         s/Mark A. Randon
                                         Mark A. Randon
                                         United States Magistrate Judge

Dated: September 6, 2013

-19-

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, September 6, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*
*Case Manager for Magistrate Judge Mark A. Randon*